**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| GOLDY THOMPSON, | : | Case No. 2:25-cv-660 |
| Plaintiff, | : | |
| vs. | : | Chief District Judge Sarah D. Morrison |
| | : | Magistrate Judge Kimberly A. Jolson |
| CHAMBERS-SMITH, *et al*., | : | |
| Defendants. | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, a prisoner at Chillicothe Correctional Institution (CCI), has filed a *pro se* civil rights Complaint under 42 U.S.C. § 1983 alleging retaliation by prison staff. (Doc. 1-2). Plaintiff names thirteen Defendants: The State of Ohio; Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); CCI Warden Shoop; Chief Inspector Morrow; Inspector Free; Captain Ramirez; Lieutenant Cannon; J. Currior; Unit Manager Ivey; T. Napier; and Corrections Officers Williams, Patrick, and Strausbaugh. (*Id.* at 4–5). By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915.

Now, this matter is before the Undersigned for a *sua sponte* review of Plaintiff's Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Having performed the initial screen, Plaintiff **MAY PROCEED** on his First Amendment retaliation claim against Defendants Napier and Strausbaugh. The Undersigned **RECOMMENDS** that the remaining claims be dismissed.

I.     PROCEDURAL BACKGROUND

Plaintiff recently filed two civil rights actions in this Court. The first case, *Thompson v. Ohio Department of Rehabilitation and Corrections, et al.*, challenges the handling of Plaintiff's legal mail at CCI. Case No. 2:25-cv-143 (S.D. Ohio Feb. 13, 2025) (Doc. 1). When Plaintiff initially filed that case, he attempted to raise additional retaliation claims, but the Undersigned recommended those claims be severed and dismissed without prejudice as improperly joined. *Thompson*, Case No. 2:25-cv-143 (S.D. Ohio Apr. 29, 2025) (Doc 8 at 11–13). The Undersigned further noted that none of the alleged retaliation incidents appeared related to the handling of Plaintiff's legal mail. (*Id*. at 11). No objections were filed, and the Chief District Judge adopted the recommendation on July 2, 2025. *Thompson*, Case No. 2:25-cv-143 (S.D. Ohio July 2, 2025) (Doc. 21).

Then, on June 12, Plaintiff filed the instant action asserting the previously severed retaliation claims. (Doc. 1). While the two cases are related, they are proceeding separately in this Court.

II.     SCREENING OF PLAINTIFF'S COMPLAINT

Plaintiff's Complaint attempts to state a First Amendment claim for retaliation by CCI staff in response to Plaintiff's use of grievance procedures to address both the improper handling of his legal mail and disrespectful treatment by staff. (Doc. 1-2 at ¶ 2). Specifically, Plaintiff alleges Defendants retaliated against him by issuing conduct reports and placing him in segregation from December 20, 2024, until January 3, 2025.

Plaintiff first alleges he was retaliated against for pursuing grievances regarding the improper handling of his legal mail. Plaintiff notes that he filed informal complaints and grievances regarding the handling of his legal mail on October 16, 2024; October 27, 2024;

October 28, 2024; and October 30, 2024. (*Id*. at ¶¶ 5–10). The remainder of the Complaint describes interactions with CCI staff—specifically Defendants Patrick, Free, Strausbaugh, Ivey, and Napier—that appear unrelated to the handling of his mail and involve what Plaintiff characterizes as disrespectful behavior that violates ODRC standards of employee conduct. (*Id*. at ¶¶ 11, 14, 16, 18, 25).

On November 12, 2024, Defendant Patrick woke Plaintiff at 3:30 a.m. When Plaintiff informed Patrick that he was no longer on the kitchen wake-up list, Defendant Patrick cursed at him, "[Y]ou is on the mufuckin list, get you ass up." (*Id*. at ¶ 11). Plaintiff filed an informal complaint (ICR) about this incident. (*Id*. at ¶ 12). Defendant Currier replied to the ICR, stating he would address the behavior with Patrick. (*Id*. at ¶ 13). When Plaintiff escalated the ICR and sought more than a verbal reprimand, Defendant Free was "sarcastic" and asked, "[W]hat do you want me to do, fire him?" (*Id*. at ¶ 14). Plaintiff then filed a grievance against Free for unprofessional behavior. (*Id*.)

On November 19, 2024, as Plaintiff returned from commissary, Defendant Strausbaugh asked Plaintiff what he had in his shirt and searched him. (*Id*. at ¶ 16). Plaintiff alleges that Strausbaugh stated "[t]his is not a retaliation." (*Id*.) But Plaintiff contends the search was retaliation for the ICR he filed against Patrick and notes that on prior occasions, Strausbaugh "confiscated the same contraband" from other inmates but "showed favoritism by not writing conduct reports." (*Id*.) It appears from the Complaint that Strausbaugh issued Plaintiff a conduct report, Plaintiff filed a grievance against Strausbaugh, and after a hearing on the conduct report, Plaintiff was found not guilty. (*Id*. at ¶ 20).

On November 25, 2024, Defendant Ivey interviewed Plaintiff about the grievance he filed against Strausbaugh. (*Id*. at ¶ 18). Ivey asked Plaintiff if he was "from up North" and stated she

3

was "trying to help [Plaintiff] understand how this work[s] down here." (*Id*.) Plaintiff states he filed an ICR against Ivey for violating ODRC standards of employee conduct because where he is from was "not what the interview should have been about." (*Id*.)

On December 18, 2024, Plaintiff attempted to speak with Defendant Napier about grievance paperwork he requested from Defendant Free. (*Id*. at ¶¶ 25, 31, 34). Plaintiff alleges that Napier violated ODRC's standards of employee conduct by asking Plaintiff, "What can I do for you BUB?" (*Id*. at ¶ 25). Plaintiff informed Napier that "BUB" is a racially derogatory term that stands for "black ugly bitch." (*Id*.) Defendant Napier denied using the term and issued Plaintiff a conduct report for disrespect and giving false information about the paperwork. (*Id*. at ¶¶ 25-26). Shortly after that, Plaintiff filed a grievance against Napier for his use of the derogatory term. (*Id*.) As a result of the conduct report, Plaintiff was placed in segregation from December 20, 2024, until January 3, 2025. (*Id*. at ¶¶ 27, 33). Plaintiff alleges the conduct report was removed from his record after further review of the incident showed that he did not lie about being asked to report to the unit staff office. (*Id*. at ¶ 34).

Plaintiff sues each Defendant in his or her individual and official capacity. He seeks monetary damages and injunctive relief ordering Defendants to cease all harassment and retaliation. (*Id*. at 13).

A.     **Legal Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma*

4

*pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (citation omitted).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Even so, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("[D]ismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim [under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)].")

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded

5

factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

  **B.**  **Analysis**

  The Undersigned construes Plaintiff's Complaint as bringing a First Amendment claim for retaliation and possibly claims regarding denial of grievances and violations of ODRC standards of employee conduct. At this stage in the proceedings, and without the benefit of briefing by the parties, the Undersigned concludes that Plaintiff's First Amendment retaliation claim against Defendants Napier and Strausbaugh **MAY PROCEED** for further development. The Undersigned advises Plaintiff that this is only a preliminary determination, and the Undersigned has not made a determination as to the merits of the claim being allowed to proceed. Nor has the Undersigned considered any potential defenses. Defendants Napier and Strausbaugh are not precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g., Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

  Plaintiff's remaining claims against Defendants, however, should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

6

    *1.*  *State of Ohio*

The State of Ohio is not a proper defendant in this case. "Section 1983 creates liability for 'persons' who deprive others of federal rights under color of law. Only a 'person' faces liability under the statute." *Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 342 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)). It is well-settled that "a State is not a 'person' within the meaning of § 1983." *Will*, 491 U.S. at 65.

Claims against the State of Ohio are also barred by Eleventh Amendment immunity. The Eleventh Amendment grants sovereign immunity to the States, guaranteeing that "nonconsenting States may not be sued by private individuals in federal court." *Guertin v. Michigan*, 912 F.3d 907, 936 (6th Cir. 2019). "This immunity bars suits 'for injunctive, declaratory or monetary relief.'" *Morgan v. Bd. of Prof'l Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (citation omitted). The State of Ohio has not consented to be sued under § 1983, and Congress has not otherwise abrogated Ohio's Eleventh Amendment immunity with respect to § 1983 claims. *See Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) ("The State of Ohio has immunity for all claims against it because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983."). Accordingly, the State of Ohio must be **DISMISSED with prejudice**.

    *2.*  *Official Capacity Claims for Money Damages*

The claims against all Defendants in their official capacities for money damages must be dismissed. The State of Ohio's Eleventh Amendment immunity also extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys.*

7

*of Ga.*, 535 U.S. 613 (2002). A suit against Defendants in their official capacity as employees of ODRC and CCI would be a way of pleading the action against the entity of which Defendants are agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation omitted)). Therefore, Defendants are immune from suit in their official capacities to the extent Plaintiff seeks monetary damages. The Undersigned **RECOMMENDS** that all official capacity claims for money damages be **DISMISSED with prejudice**.

        3.     *Lack of Personal Involvement*

The claims against ODRC Director Chambers-Smith, CCI Warden Shoop, Captain Ramirez, Williams, and Cannon should be dismissed because Plaintiff does not allege that they were personally involved in the events described in the Complaint or that they can otherwise be held responsible. "It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 for alleged constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct." *Johnson v. ODRC*, No. 1:23cv39, 2023 WL 4084830, at *4 (S.D. Ohio June 20, 2023), *report and recommendation adopted*, 2023 WL 5275384 (S.D. Ohio Aug. 16, 2023) (citing *Williams v. Hodge*, No. 3:08cv387, 2009 WL 47141, at *3 (M.D. Tenn. Jan. 7, 2009)).

Director Chambers-Smith, Warden Shoop, and Captain Ramirez also cannot be held responsible based only on their supervisory roles because *respondeat superior* does not apply to § 1983 claims and may not serve as the basis for liability. *See Ashcroft*, 556 U.S. at 676; *Monell*, 436 U.S. at 658. "[Section] 1983 liability of supervisory personnel must be based on more than

the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Liability will not be established against a supervisor unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). *See also Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) ("An individual capacity claim based on supervisory liability, like all individual capacity claims, requires an allegation of personal liability.").

Here, Plaintiff's asserts Defendants Chambers-Smith, Shoop, and Ramirez "implicitly authorized, encouraged, approved, or knowingly acquiesced in the retaliatory conduct . . . ." (Doc. 1-2 at 12). But Plaintiff does not elaborate on this conclusory statement, nor does Plaintiff allege facts from which this Court could plausibly infer personal liability. Therefore, they, too, must be **DISMISSED**.

    4.  *Retaliation Claims Against the Other Defendants*

Plaintiff alleges the remaining named Defendants retaliated against him by "writing tickets" and placing him in segregation in response to Plaintiff exercising his First Amendment right to seek redress and utilize grievance procedures. (Doc. 1-2 at ¶ 1). Plaintiff attempts to connect his retaliation claim to the grievances he filed about the improper handling of his legal mail and the disrespectful treatment he received from prison staff.

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; in other words, that the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam). "Under the third element, 'the subjective motivation of the

9

defendants is at issue.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (citation omitted). That is, a plaintiff's subjective belief that he has been retaliated against is insufficient, *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), and a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Wholly conclusory allegations of retaliation are insufficient to state a plausible claim for relief. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).

At this stage of the proceedings, the Court assumes Plaintiff has stated the first element of his retaliation claim, as he made oral complaints and filed grievances regarding issues with staff and his mail. But Plaintiff does not plausibly allege that he suffered an adverse action by any Defendants other than Napier and Strausbaugh. From the Complaint, it does not appear that any other Defendant had a role in issuing the conduct reports or placing him in segregation. Conclusory allegations and merely asserting the ultimate fact of retaliation is insufficient to state a claim for relief. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) ("conclusory allegations of retaliatory motive unsupported by material facts" do not state a claim under § 1983) (citation omitted); *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotation marks omitted). Accordingly, the Undersigned **RECCOMENDS** that Plaintiff's retaliation claim be **DISMISSED** against all Defendants but Napier and Strausbaugh.

       5.     *Denial of Informal Complaints and Grievances*

In several paragraphs of the Complaint, Plaintiff describes the filing and outcome of various grievances, as well as the individuals responsible for those determinations. (*See, e.g.*, Doc. 1-2 at 9–11). Specifically, Plaintiff describes the roles Defendants Morrow, Free, Currior, and Ivey had in the processing of his grievances. (*See, e.g.*, *id.* at ¶¶ 12-15, 17, 19–24, 28–35). But a plaintiff fails to state a claim for relief under § 1983 where his only allegation is that his grievances were denied and/or mishandled. This is because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted); *see also Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (finding the "denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983"). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee*, 199 F.3d at 300. Thus, Plaintiff cannot hold any Defendant liable simply for failing to correct the violations of others, at the grievance stage or otherwise. *See also Pounds v. Myers*, 76 F. App'x 630 (6th Cir. 2003) (finding defendant "could not be held liable merely on the basis that they failed to remedy a grievance").

       6.     *Violations of ODRC Policy*

Finally, Plaintiff alleges certain Defendants violated ODRC policy governing employee conduct because those Defendants treated him with disrespect and sarcasm and called him names. (*See, e.g.*, Doc. 1-2 at 9–11). Plaintiff seeks reprimands and reminders that such conduct is beneath them. But "[s]ection 1983 does not provide a remedy for violations of state laws or regulations." *Honzu v. Doe*, No. 2:22-CV-292, 2023 WL 3506155, at *6 (S.D. Ohio May 17, 2023), *report and recommendation adopted sub nom. Honzu v. Warden, Ross Correctional Instn.*, No. 2:22-cv-292,

2023 WL 5951768 (S.D. Ohio Sept. 13, 2023). *See also Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) ("The purpose of § 1983 is to remedy violations of federal law, not state law."). Thus, the "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases). Plaintiff's allegations or suggestions here that prison staff failed to follow state or ODRC employee policies do not state a claim for relief.

### III. CONCLUSION

**IT IS THEREFORE RECOMMENDED:**

1. The claims in Plaintiff's Complaint should be **DISMISSED with prejudice** as to the State of Ohio, as well as all claims seeking money damages against any Defendant in his or her official capacity. 28 U.S.C. § 1915(e)(2)(B).

2. The Complaint should be **DISMISSED** against Defendants Chambers-Smith, Shoop, Ramirez, Williams, and Cannon because Plaintiff does not allege personal involvement by these Defendants.

3. Plaintiff's retaliation claim should be **DISMISSED** against all Defendants but Defendants Napier and Strausbaugh for failure to state a claim upon which relief may be granted.

4. Plaintiff's claims regarding the denial of grievances and/or violations of ODRC standards of employee conduct should be **DISMISSED** for failure to state a claim upon which relief may be granted.

**IT IS THEREFORE ORDERED:**

1. Plaintiff may **PROCEED** at this juncture on his First Amendment retaliation claim against Defendants Napier and Strausbaugh.

2. The United States Marshal shall serve a copy of the Complaint, summons, and this Order and Report and Recommendation upon Defendants Napier and Strausbaugh as directed by Plaintiff, with costs of service to be advanced by the United States. (*See* Doc. 1-3 at 11, 13; Doc. 1-4 at 19–20, 23–24).

3. Plaintiff shall serve upon Defendants Napier and Strausbaugh or, if appearance has been entered by counsel, upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or Defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4. The Clerk of Court is **DIRECTED** to provide Plaintiff with a copy of the *Pro Se Handbook*.

5. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date: July 22, 2025  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
United States Magistrate Judge

**PROCEDURE ON OBJECTIONS**

Pursuant to Federal Rule of Civil Procedure 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).